**Lead Case no. 19-01481 (GAG)**
**Member Case no. 19-1739 (GAG)**

IN THE

# United States District Court District of Puerto Rico

––––––––––

CLUB GALLÍSTICO DE PUERTO RICO, ET AL.
*Plaintiffs,*

v.

UNITED STATES OF AMERICA, ET AL.
*Defendants.*

––––––––––

ASOC. CULTURAL Y DEPORTIVA DEL GALLO FINO DE PELEA, ET AL.
*Plaintiffs,*

v.

UNITED STATES OF AMERICA, ET AL.
*Defendants.*

BRIEF OF *AMICUS CURIÆ* HON. JENNIFFER A. GONZÁLEZ COLÓN,
RESIDENT COMMISSIONER OF PUERTO RICO, IN SUPPORT OF THE PLAINTIFFS

Veronica Ferraiuoli-Hornedo
USDC-PR Bar no. 213814

OFFICE OF THE RESIDENT COMMISSIONER
1609 Longworth House Office Building
Washington, DC 20515
202.225.2615   787.723.6333
vero@mail.house.gov

Legal Counsel to
HON. JENNIFFER GONZALEZ-COLON
Member of Congress

## CORPORATE DISCLOSURE STATEMENT

The RESIDENT COMMISSIONER OF PUERTO RICO is not required to file a corporate disclosure statement.

---

## LEGISLATIVE HISTORY OF
## SECTION 26 OF THE ANIMAL WELFARE ACT

---

### INTRODUCTION

The ANIMAL WELFARE ACT was the first federal law in the United States regulating animals used in research.

Originally titled the LABORATORY ANIMAL WELFARE ACT, it was passed on August 24, 1966, and became effective on 25 May 1967.[1] The statute was the result of several years of lobbying by animal welfare organizations and of a growing public outcry over allegations that large numbers of pets were being "dognapped" for sale to medical research laboratories.[2] Accordingly, the stated purposes of the LABORATORY ANIMAL WELFARE ACT were to protect the owners of dogs and cats from theft of such pets; prevent the sale or use of dogs and cats that had been stolen; and assure that certain animals intended for use in research facilities were provided humane care and treatment.[3]

Congress amended the Act in 1970, 1976, 1985, 1990, 2002, 2007, 2014 and 2018. These amendments generally were intended to expand its scope or to clarify various provisions. Relevant to the issues here are the 1976, 2002, 2007, 2014, and 2018 amendments. Accordingly, the discussion in this brief will be limited to those amendments.

---

[1]   LABORATORY ANIMAL WELFARE ACT, Pub. L. No. 89-544, 80 Stat. 350 (1966), available at https://www.govinfo.gov/content/pkg/STATUTE-80/pdf/STATUTE-80-Pg350.pdf.

[2]   *See* Animal Dealer Regulation: Hearings before the Committee on Commerce, Senate, 89th Cong. 2 (1966) ("Since the introduction of my bill, the problem of pet stealing and animal dealer cruelty has been vividly brought to the public's attention by stories in national magazines and on national TV programs."), available at https://naldc.nal.usda.gov/download/CAT74600200/PDF.

[3]   Pub. L. No. 89-544, § 1.

As will be shown, the plain text of the statute limits its application to activity which occurs in interstate or foreign commerce or has a substantial effect on interstate or foreign commerce. Thus, any purely intrastate activity or intrastate activity with a *de minimis* effect on interstate or foreign commerce must fall outside of the purview of the regulated conduct.

## 1976 AMENDMENTS TO THE LABORATORY ANIMAL WELFARE ACT

The 1976 amendments to the LABORATORY ANIMAL WELFARE ACT formally re-named it the ANIMAL WELFARE ACT.[4] Generally, these amendments expanded the act in various respects, including to cover dogs used for hunting, security, or breeding purposes, and to require intermediate handlers and carriers, in transporting animals covered by the act, to adhere to standards promulgated by the Secretary. They also established standards for shipping containers, feed, water, rest, ventilation, temperature, and handling in order to promote better care for animals during their transport, in response to reports in the early 1970s of several graphic deaths of animals during transportation due to insufficient ventilation or extreme temperatures. Furthermore, they tackled public concern over animals in fighting ventures.

In 1974, Congressman Thomas Foley held hearings on a bill to amend the LABORATORY ANIMAL WELFARE ACT which shed light on the underground dog fighting business. Despite the massive public demand for the passage of an amendment to the LABORATORY ANIMAL WELFARE ACT, it did not go through until it was re-introduced in 1975. The 1976 amendments passed, ***despite objections by the U.S. Department of Agriculture and the U.S. Attorney General, who believed that animal fighting was a state and local law enforcement issue.***

---

[4]   Pub. L. No. 94-279, 90 Stat. 417 (1976), available at https://www.govinfo.gov/content/pkg/STATUTE-90/pdf/STATUTE-90-Pg417.pdf.

During the 1974 hearings, the Justice Department voiced strong concerns over the scope of the proposed animal fighting prohibitions. The Assistant Attorney General's testimony, in the relevant provision, was as follows:

> The provisions of section 15 of the bill, which create a new Section 26 in the 1966 Act, contain some substantial problems as presently drafted. […]
>
> Aside from any infirmities in the present draft of the bill, the Department strongly feels that prohibitions against dog or animal fighting ventures should be a matter of state rather than federal law. ***Traditionally in our form of government the responsibility for the maintenance of law and order has been lodged with state and local authorities***. Federal jurisdiction has been for the most part restricted to matters directly involving a function of the federal government or otherwise beyond the normal enforcement capability of such state or local authorities. ***There appears to be no sound basis for the view that federal intervention in this area could more effectively handle such investigations or have a more deterrent effect in preventing the type of offenses contained in H.R. 16738***.[5]

Several members of Congress were emphatic about the limited scope that any such legislation would have with regards to preempting State law. For example, the sponsor of the bill, Congressman Foley stated as follows:

> During previous hearings of the committee, it came to the attention of the subcommittee that evidence clearly indicates an increase in dogfighting throughout the United States. We have been made aware of this fact through the efforts of animal welfare societies and investigative reports through the news media.
>
> Although the United States has in State law and local ordinances widespread prohibitions against the fighting of animals, serious questions have arisen as to whether these laws are, by themselves, sufficient to prevent this allegedly growing practice.
>
> We have before the subcommittee this morning additional legislation which seeks to prohibit the use of the mails for transmitting information in addition to prohibiting the interstate transportation of warm-blooded mammals for the purpose of dogfighting.
>
> I want to emphasize that the legislation beforehand, that if the subcommittee does determine to report any legislation, will be made clear, either by legislative amendment or in the report, not to seek to preempt that the measure does or

---

[5]   Animal Welfare Act Amendments of 1974: Hearings before the Subcommittee on Livestock and Grains of the Committee on Agriculture, House of Representatives, 93rd Cong. 241-242 (1974) (Testimony by W. Vincent Rakestraw, Asst. Attorney General, dated Oct. 11, 1974) (emphasis added).

preclude State or local laws. Instead, the Federal law, would be to supplement State or local statutes. ***We will have to insure that there is no legal assumption of what we call preemption since the primary enforcement of any such laws will probably necessarily continue to reside with local and State governments***.[6]

***

***I said earlier, we are concerned about the preemption issue. I think I speak for the entire subcommittee in suggesting that we have no desire to limit the role of local and State governments in enforcing existing local or State laws***.[7]

In no uncertain terms, further he stated that

> ***One of the problems with which I think the subcommittee will be faced is the limited Federal basis of jurisdiction in this area. This is a type of crime which is classically within the accepted police powers of the States relating to the health, welfare, and safety of their citizens. Therefore, Federal jurisdiction probably would be based upon the commerce clause and moving in interstate commerce for the purpose of committing acts in violation of State law or appropriate commerce activities.*** Unfortunately, it is often difficult to establish that, the person moved in interstate commerce with that intent.

> We do have other statutes on the books now that do prohibit similar activity; for example, the interstate transmission of gambling information. Those who move in interstate commerce for the purpose of engaging in certain criminal acts, including fomenting riots or engaging in racketeering, engage in Federal crimes; but the subcommittee will have to examine these Federal precedents with regard to the legislation before us.

> As I said earlier, ***we are concerned about the preemption issue***. I think I speak for the entire subcommittee in suggesting that ***we have no desire to limit the role of local and State governments in enforcing existing local or State laws***.[8]

As evidenced in the following exchange, the Hon. Harrison A. Williams, Jr., U.S. Senator from New Jersey, also expressed his understanding of the reach of this federal intervention would be limited to interstate commerce:

> Senator Williams. I appreciate that, and in the statement our office has researched this dogfighting activity back to Emperor Lucullus. The history of dogfighting started in the days of the Roman Empire, and it rose and fell as an activity of man. Now it is on the rise again.

---

[6]   93rd Cong. 242 (emphasis added).

[7]   93rd Cong. 271 (emphasis added).

[8]   93rd Cong. 270-271 (emphasis added).

I think the legislation that I have introduced is a bullet shot at the practice. ***It deals with dogfighting, and effectively reaches it through the interstate commerce aspects.*** We all know that States prohibit this through law, but evidently it has not been effective at the State level because the practice continues.

So I certainly hope that this committee, under your leadership, will be able to report a bill that will get to the House floor. I know that on the Senate side the chairman of the committee that has the bill there, Senator Magnuson, is a most humane man, a good man, and he has legislation. When he moves in, legislation moves out. So I am hopeful that this can be accomplished this year.

I appreciate it.

Mr. Foley: Thank you very much, Senator.

We are very grateful to you for coming today to present your views on this legislation. I know that you are a distinguished committee chairman in the other body and that you have commitments this morning before your own committee.

I want to ask you, if I may, just one or two very brief questions for the record.

***Your intention, I gather, by this legislation is to supplement rather than to replace existing State laws prohibiting dogfighting and cruelty to animals.***

Is that correct ?

Senator Williams***: Yes. There is no preemption at all in our bill***, and certainly the States can deal with it in their ways, too. And I think perhaps the fact that the national attention has been focused, there will be a more alert State administration of their own State laws.

Mr. Foley: Do you feel that it is necessary, however, to provide additional enforcement authority on the Federal side in order to supplement the States' ability to curb this practice?

Senator Williams. Exactly that.[9]

The 1976 amendments added the following Section 26 to the ANIMAL WELFARE ACT:

SEC. 26.

(a) It shall be unlawful for any person to knowingly sponsor or exhibit an animal in any animal fighting venture to which any animal was moved in interstate or foreign commerce.

(b) It shall be unlawful for any person to knowingly sell, buy, transport, or deliver to another person or receive from another person for purposes of transportation, in interstate or foreign commerce, any dog or other animal for

---

[9]   93rd Cong. 274-275 (emphasis added).

purposes of having the dog or other animal participate in an animal fighting venture.

(c) It shall be unlawful for any person to knowingly use the mail service of the United States Postal Service or any interstate instrumentality for purposes of promoting or in any other manner furthering an animal fighting venture except as performed outside the limits of the States of the United States.

(d) Notwithstanding the provisions of subsections (a), (b), or (c) of this section, the activities prohibited by such subsections shall be unlawful with respect to fighting ventures involving live birds only if the fight is to take place in a State where it would be in violation of the laws thereof.

(e) Any person who violates subsection (a), (b), or (c) shall be fined not more than $5,000 or imprisoned for not more than 1 year, or both, for each such violation.

(f) The Secretary or any other person authorized by him shall make such investigations as the Secretary deems necessary to deter-mine whether any person has violated or is violating any provision of this section, and the Secretary may obtain the assistance of the Federal Bureau of Investigation, the Department of the Treasury, or other law enforcement agencies of the United States, and State and local governmental agencies, in the conduct of such investigations, under cooperative agreements with such agencies. A warrant to search for and seize any animal which there is probable cause to believe was involved in any violation of this section may be issued by any judge of the United States or of a State court of record or by a United States magistrate within the district wherein the animal sought is located. Any United States marshal or any person authorized under this section to conduct investigations may apply for and execute any such warrant, and any animal seized under such a warrant shall be held by the United States marshal or other authorized person pending disposition thereof by the court in accordance with this paragraph (f). Necessary care including veterinary treatment shall be provided while the animals are so held in custody. Any animal involved in any violation of this section shall be liable to be proceeded against and forfeited to the United States at any time on complaint filed in any United States district court or other court of the United States for any jurisdiction in which the animal is found and upon a judgment of forfeiture shall be disposed of by sale for lawful purposes or by other humane means, as the court may direct. Costs incurred by the United States for care of animals seized and forfeited under this section shall be recoverable from the owner of the animals if he appears in such forfeiture proceeding or in a separate civil action brought in the juris-diction in which the owner is found, resides, or transacts business.

(g) For purposes of this section—

(1) the term 'animal fighting venture' means any event which involves a fight between at least two animals and is conducted for purposes of sport, wagering, or entertainment except that the term 'animal fighting venture' shall not be deemed to include any activity the primary purpose of which involves the use of one or more animals in hunting another animal or animals, such as water-fowl, bird, raccoon, or fox hunting;

- 7 -

(2) the term 'interstate or foreign commerce' means—

(A) any movement between any place in a State to any place in another State or between places in the same State through another State; or

(B) any movement from a foreign country into any State;

(3) the term 'interstate instrumentality' means telegraph, telephone, radio, or television operating in interstate or foreign commerce;

(4) the term 'State' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States;

(5) the term 'animal' means any live bird, or any live dog or other mammal, except man; and

(6) the conduct by any person of any activity prohibited by this section shall not render such person subject to the other sections of this Act as a dealer, exhibitor, or otherwise.

(h) (1) The provisions of this Act shall not supersede or otherwise invalidate any such State, local, or municipal legislation or ordinance relating to animal fighting ventures except in case of a direct and irreconcilable conflict between any requirements thereunder and this Act or any rule, regulation, or standard hereunder.

(2) Section 3001(a) of title 39, United States Code, is amended by adding immediately after the words 'title 18' a comma and the words 'or section 26 of the Animal Welfare Act'.

Thus, as initially enacted, sponsoring or exhibiting cockfights or transporting animals involved in cockfighting was illegal under Section 26 of the ANIMAL WELFARE ACT *only* if it involved a fighting cock that had been transported in interstate commerce and the fight was to take place in a State in which it was illegal. In other words, the interstate requirement rested on the animal involved in the cockfight and not in any diffuse effect on interstate commerce.

### 2002 AMENDMENTS TO THE ANIMAL WELFARE ACT

Title X, Subtitle D, of the FARM SECURITY AND RURAL INVESTMENT ACT OF 2002 made it a misdemeanor to ship a bird in interstate commerce for fighting purposes, or to sponsor or exhibit any bird in a fight with knowledge that any of the birds were so shipped (even fights within a state where the practice is permitted). The law also increased the maximum financial penalty for a violation (a misdemeanor) of the anti-fighting provisions of the ANIMAL WELFARE ACT, to $15,000 from $5,000.[10]

As reported by the Committees on Agriculture and on International Relations to the Committee of the Whole House, the AGRICULTURAL ACT OF 2001 did not provide for amendments to the ANIMAL WELFARE ACT.[11] However, during the debate in the House, Mr. Blumenaur, from Oregon, offered several amendments to Section 26. One of these amendments would have barred all interstate movement of fighting cocks; this amendment was not accepted. The other amendment, which was accepted, increased the penalties under Section 26 and barred the shipment of animals for fighting purposes from the United States to foreign countries. The relevant portion of the debate on these amendments is as follows:

<u>Amendment No. 8 Offered by Mr. Blumenauer</u>

Mr. BLUMENAUER. Mr. Chairman, I offer an amendment.

The CHAIRMAN pro tempore. The Clerk will designate the amendment. The text of the amendment is as follows:

---

[10] Pub. L. No. 107-171, 116 Stat. 491(2002), available at https://www.govinfo.gov/content/pkg/PLAW-107publ171/pdf/PLAW-107publ171.pdf.

[11] Report by the Committees on Agriculture and on International Relations to accompany H.R. 2646, H.Rept. 107-191 (July 26, 2001), available at https://www.congress.gov/107/bills/hr2646/BILLS-107hr2646rh.pdf.

Amendment offered by Mr. Blumenauer:

At the end of title IX (page 354, after line 16), insert the following new section:

SEC. 932. PROHIBITION ON INTERSTATE MOVEMENT OF ANIMALS FOR ANIMAL FIGHTING.

(a) Prohibition on Interstate Movement of Animals for Animal Fighting.--Section 26(d) of the Animal Welfare Act (7 U.S.C. 2156(d)) is amended to read as follows:

``(d) Activities Not Subject to Prohibition.--This section does not apply to the selling, buying, transporting, or delivery of an animal in interstate or foreign commerce for any purpose, so long as the purpose does not include participation of the animal in an animal fighting venture.''.

(b) Effective Date.--The amendment made by this section take effect 30 days after the date of the enactment of this Act.

In the table of contents, after the item relating to section 931 (page 8, before line 1), insert the following new item:

Sec. 932. Prohibition on interstate movement of animals for animal fighting.

Mr. BLUMENAUER. Mr. Chairman, I rise in support of the amendment in association with the gentleman from Colorado (Mr. Tancredo) and appreciate his leadership and support on this important issue.

One area of overwhelming consensus on the part of the American public is for the protection of animals, and there is an almost universal aversion to barbaric sports like dog fighting and cockfighting. We have done our job as it relates to dogs. We have not, as it relates to the practice of cockfighting. The majority of the American public overwhelmingly opposes it, and this House voted to ban its use 25 years ago. Yet it still lingers on.

Male chickens are bred to display traits of hostility. They are trained to fight, and then they are armed with pikes or knives to maim other roosters. It is calculated to maximize the bloodshed.

Sadly, we are in today the third century of a struggle to eliminate this cruel and barbaric practice. Much progress has in fact been made; not here in Congress, but at the State level. It began in the 19th century with the State of Massachusetts in 1837, and went on through the 1800's with States like Mississippi and Arkansas. Today, 47 States have outlawed the practice, and there is strong evidence that the citizens of the three remaining States are likewise strongly opposed. In all likelihood, there will be another one or two States that will outlaw this through their legislatures, and, if not, then by the people themselves.

- 10 -

The purpose of this amendment, Mr. Chairman, is to make sure that the Federal Government is not complicit in aiding and abetting this barbaric practice. The Federal Government has no business undermining the laws in the 47 States by permitting the transfer of these birds across State lines.

There are a couple of problems with the situation that we face right now. In the States where the practice is legal, just the three of them, the cockfighting activities, the arenas, the pits, have developed around the borders of the State. So like in Texas, people come across the border into Oklahoma and engage in the practice. It makes it easy for people to undermine the activities in a State like Texas by going to Louisiana or to Oklahoma.

The practice of moving these birds across State lines raises another difficult problem, because law enforcement officials have to deal with the consequences of what is happening in the other 47 States where it is not legal. People who are involved, they claim they are just raising and training the birds, not involved in actual cockfighting activities itself. But time and time and time again, the practice activities degenerate into actual illegal cockfighting activities, and I will not take the time now to enter into the Record example after example where these activities are taking place. And it is not just the barbaric act on the animals themselves that has been outlawed, but there is a great deal of illegal gambling; and there are time and time again violent acts that are associated with these clandestine activities. That is why over 100 law enforcement agencies have urged the enactment of this legislation.

Mr. Chairman, Members of this body have recognized that it is time to step up and be counted. Last session we had a majority of Members who cosponsored legislation, with the lead sponsor being our colleague, the gentleman from Minnesota (Mr. Peterson). For some reason, we could not bring that legislation forward. This session we have over 200 Members who have already cosponsored legislation, but somehow it has been left out of this bill.

I strongly urge that we correct this oversight now. Every major law enforcement agency in my State is supporting the measure because it will make their job easier while stopping this barbaric practice. I suggest that we move to approve this amendment now, to support the humane treatment of animals, and support the efforts of our law enforcement officials. We do not have to wait for legislation that is somehow lingering. We can put it into this bill now.

We do not allow transportation across State lines of dogs for fighting purposes. We should do the same thing as it relates to cockfighting. Take the Federal Government out of the business of aiding and abetting this 3-century legacy of shame.

Mr. COMBEST. Mr. Chairman, I rise in opposition to the amendment. [...]

Mr. TANCREDO. Mr. Chairman, I move to strike the last word. Mr. Chairman, I rise in support of the Blumenauer-Tancredo amendment. It is a narrowly drawn measure that eliminates a one-phrase loophole in the Animal Welfare Act. Simply put, it bars the shipment of birds for the purpose of fighting.

- 11 -

It is clear. It is not ambiguous. I think that it cannot be used to do anything but what we are saying it should do.

Now, I know that if it puts a slight burden on any other aspect of the industry, there are people who are going to be opposed to it and, I assume, or I suppose that that is proper from their point of view; but I think that it is not that much of a burden that it would prevent this amendment from being effective, from actually doing what it simply says we should do, that these birds should not be shipped across State lines for this horrendous purpose. It does not affect the ownership of the use of birds for show or the legitimate transport of birds for agricultural purposes. It strikes the provision that permits transporting birds for the purpose of fighting, the purpose of fighting, to States in which cockfighting is legal.

This particular activity is rampant, in part, because of the Federal loophole that allows birds to be transported for this activity. This loophole will be closed if this passes and, up to this point, it has served to undermine local law enforcement in trying to enforce their own State laws against this practice. Illegal and violent activities often accompany cockfights, such things as gambling, money laundering, assaults, and even more serious, murders. Most of the money made in this activity is illegal. Gambling tax evasion is rampant. The activity itself of cockfighting is inhumane and barbaric. It is not just a human issue, it is a serious law enforcement issue. Over 100 law enforcement agencies have endorsed this amendment.

This is not an attack on a way of life but, rather, an attack on a criminal activity and a way to help law enforcement do their own job in their own States.

Mr. Chairman, I urge support for the Blumenauer-Tancredo amendment.

Mrs. MORELLA. Mr. Chairman, I move to strike the requisite number of words.

Mr. Chairman, I rise in strong support of the Blumenauer-Tancredo amendment. I want to thank the gentleman for bringing this inhumane issue of cockfighting to the floor.

The amendment seeks to eliminate a one-phrase loophole in the Federal Animal Welfare Act by barring any interstate shipment of birds for fighting purposes. I understand the concerns of the chairman, but I think they can be worked out.

Currently, 47 States have outlawed cockfighting, but a Federal loophole allows the shipment of birds from States where cockfighting is illegal to any State where it is legal. This loophole is exploited to conduct illegal activity around the country.

I want to stress that this amendment would not affect the ownership or use of birds for show purposes or the transport of birds for legitimate agricultural purposes. This amendment would protect States' rights by removing this loophole which currently undermines the ability of State and local law enforcement agencies to enforce their bans on animal fighting.

The amendment has the endorsement, as has been mentioned, of 98 law enforcement agencies, 40 newspapers across the country, and also no mainstream agricultural organizations have expressed any opposition to the legislation.

Cockfighting is not a sport. Cockfighting promotes illegal gambling and animal cruelty. At cockfights, birds are dragged to increase their aggression and drugged; they are affixed with knives to their legs, placed in a pit; and unable to escape the pit, the birds mutilate each other.

I am sure my colleagues will all agree that fighting dogs for entertainment is inhumane and cruel. Surely, cockfighting is inhumane and cruel. I urge my colleagues to join me in supporting the Blumenauer-Tancredo amendment.

Mr. STENHOLM. Mr. Chairman, I move to strike the requisite number of words.

Mr. Chairman, in Texas, cockfighting is illegal, and several law enforcement organizations say that prohibiting transport to other States will help them crack down on illegal operations. That is our law.

I would like to ask a question of the authors of this amendment, though.

In a situation in which it is legal within a State to have cockfighting, under this amendment, if it should pass, would it prohibit a raiser of fighting chickens in a State in which it is legal to ship to a foreign country in which it is also legal? [...]

Mr. BLUMENAUER. Mr. Chairman, to the best of my knowledge, it is not.

That is why I have a subsequent amendment designated number 9 which I will offer that would make it illegal to transport these birds out of the United States.

Mr. STENHOLM. Mr. Chairman, reclaiming my time, I guess this is what is troubling. Personally, I oppose cockfighting. I mean that is our State law, and that is my personal feeling. But I am troubled, as so often is the case, when we pass amendments that do that which we all want to do, there are unintended consequences. It seems to me that if we have a State in which an activity is legal, whether I agree with it or not is immaterial, so long as it is constitutional. I am troubled by this wording and unintended consequences that might then be interpreted in other areas in which none of us can even think about right now. But if the gentleman is going to say to a State that has made the determination as yet that it is still legal and then we are going to begin prosecuting legal activities within a State that ship to another country, we are getting into interstate commerce; and I am not sure all of this is what the gentleman intends to do.

I raise this question. I appreciate the gentleman's clarification of his intent, but I think it points out that there can be some very, very serious unintended consequences. As I say, in Texas we outlawed it a long time ago; you cannot do it legally in Texas, and I agree with that. I agree with our law enforcement that are having a difficult time doing what the gentleman is trying to prohibit, but I also worry about the unintended consequences. [...]

Mr. BLUMENAUER. Mr. Chairman, I appreciate the gentleman's concern about unintended consequences. The issue that the gentleman talks about in terms of the export of these animals out of the country, which is perfectly legal, is one of those unintended consequences. The reason I will be offering another amendment is right now, it is legal to export from the United States dogs that are bred for fighting. I do not think anybody here agrees with it. It is illegal in the United States to do it. It is an unintended consequence.

What we are attempting to do with this amendment that is before us now is to close the unintended consequence in terms of how it moves right now across State lines, and amendment No. 9 would close the loophole not just for fighting birds, but for dogs which I think no Member of this assembly believes we should do, and it was one of the unintended consequences of not writing the Animal Welfare law properly whenever that was enacted.

I appreciate the gentleman's concern, and I will be offering an amendment to try and correct that.

Mr. STENHOLM. Mr. Chairman, reclaiming my time, I thank the gentleman for his clarification. ***I am not an attorney, but there is something that just raised its head regarding constitutionality and individual rights, whether we agree with them or not. How many times do we stand on this floor and have individuals say, I do not agree with this, but the Constitution of the United States provides that it happens. Until we change laws, I am troubled by the fact that we here are about to supersede our wisdom on another State's interpretation of what is legal and illegal. As I said, in Texas, we made the decision. But I think we are trying to make a decision for a few other States in which I question whether that is something we want to do.***

The CHAIRMAN pro tempore (Mr. Hastings of Washington). The question is on the amendment offered by the gentleman from Oregon (Mr. Blumenauer).

The question was taken; and the Chairman pro tempore announced that the noes appeared to have it.[12]

***

Amendment No. 9 Offered by Mr. Blumenauer

Mr. BLUMENAUER. Mr. Chairman, I offer an amendment.

The CHAIRMAN pro tempore. The Clerk will designate the amendment. The text of the amendment is as follows:

---

[12]   147 Cong. Rec. H6274-H6276 (daily ed. Oct. 4, 2001) (emphasis added), available at https://www.congress.gov/congressional-record/2001/10/04/house-section/article/H6266-2.

Amendment No. 9 offered by Mr. Blumenauer:

At the end of title IX (page 354, after line 16), insert the following new section:

SEC. 932. PENALTIES AND FOREIGN COMMERCE PROVISIONS OF THE ANIMAL WELFARE ACT.

(a) Penalties and Foreign Commerce Provisions of the Animal Welfare Act.--Section 26 of the Animal Welfare Act (7 U.S.C. 2156) is amended--

(1) in subsection (e)--

(A) by inserting "Penalties.—" after "(e)";

(B) by striking "$5,000" and inserting "$15,000"; and

(C) by striking "1 year" and inserting "2 years"; and

(2) in subsection (g)(2)(B), by inserting at the end before the semicolon the following: "or from any State into any foreign country".

(b) Effective Date.--The amendments made by this section take effect 30 days after the date of the enactment of this Act.

In the table of contents, after the item relating to section 931 (page 8, before line 1), insert the following new item:

Sec. 932. Penalties and foreign commerce provisions of the Animal Welfare Act.

Mr. BLUMENAUER. Mr. Chairman, I did want to follow up on the important points raised by the chairman and the ranking member dealing with unintended consequences and other issues that we have in terms of dealing with activities of animals for fighting purposes.

Mr. Chairman, I offer this amendment to deal with the concerns, legitimate concerns, that have been raised. It would close a loophole in the Animal Welfare Act that allows for the shipment of fighting dogs or birds from the United States to foreign countries, and it increases the penalties for promoting illegal animal fighting venues.

Mr. Chairman, the current penalties are 25 years old and are in dire need of update. It increases the maximum penalties from 1 year and a $5,000 fine to 2 years and a $15,000.

For comparison, Mr. Chairman, the Federal law passed last year prohibiting animal crush videos provided for maximum penalties of 5 years and $250,000 fine;

- 15 -

and in most States there are provisions for a maximum of 5 years imprisonment for animal fighting, with some States' penalties as high as 10 years or $100,000.

With higher penalties, U.S. Attorneys are more likely to prosecute animal fighting violations. When the Federal anti-animal fighting law was enacted in 1976, no State made animal fighting a felony. Today, 46 States have felony provisions for animal fighting. We must increase our quarter-century-old Federal penalties to make them work in today's climate.

Closing the foreign commerce loophole is equally important. I appreciate my colleague's pointing it out. In 1976, Congress added a section to the Animal Welfare Act, section 26, to crack down on dogfighting and cockfighting; but it did not, however, ban shipment of dogs or birds from the United States to foreign countries. This loophole allows shipment of fighting birds to foreign countries that provides a smoke screen behind which illegal cockfighters operate here.

Ironically, Mr. Chairman, the United States prohibits the importing of animals for fighting but still allows the exports of this animal; a practice I believe may well violate international trade rules.

It is also important to note that the provisions of this amendment apply to the practice of dogfighting. As I mentioned previously, this is illegal in all 50 States. The same dire activities to breed the animals for aggressive characteristics, train them, and then place them in a pit to fight, to injure, or die applies as it does to cockfighting. We must not allow these dogs to be bred in the United States for shipment abroad.

Mr. Chairman, cockfighters rear birds for aggressive behavior. We have had the same thing in terms of what happens to the dogs. These practices are a major underground industry. It is time to close all possible loopholes, increase the penalties, and ban shipments of fighting dogs and birds to foreign countries.

The CHAIRMAN pro tempore. The question is on the amendment offered by the gentleman from Oregon (Mr. Blumenauer).

The amendment was agreed to.[13]

---

[13]   147 Cong. Rec. H6278 (daily ed. Oct. 4, 2001), available at https://www.congress.gov/congressional-record/2001/10/04/house-section/article/H6266-2.

The companion bill in the Senate, S. 1731, the AGRICULTURE, CONSERVATION, AND RURAL ENHANCEMENT ACT OF 2001, did provide for amendments to Section 26 of the ANIMAL WELFARE ACT. Sections 1024 and 1025 of the bill, as introduced, provided as follows:

> SEC. 1024. PENALTIES AND FOREIGN COMMERCE PROVISIONS OF THE ANIMAL WELFARE ACT.
>
> (a) Penalties and Foreign Commerce Provisions of the Animal Welfare Act.-- Section 26 of the Animal Welfare Act (7 U.S.C. 2156) is amended--
>
> (1) in subsection (e)--
>
> (A) by inserting "Penalties.—" after "(e)";
>
> (B) by striking "$5,000" and inserting "$15,000"; and
>
> (C) by striking "1 year" and inserting "2 years"; and
>
> (2) in subsection (g)(2)(B), by inserting at the end before the semicolon the following: "or from any State into any foreign country".
>
> (b) Effective Date.--The amendments made by this section take effect 30 days after the date of the enactment of this Act.
>
> SEC. 1025. PROHIBITION ON INTERSTATE MOVEMENT OF ANIMALS FOR ANIMAL FIGHTING.
>
> (a) Prohibition on Interstate Movement of Animals for Animal Fighting.-- Section 26(d) of the Animal Welfare Act (7 U.S.C. 2156(d)) is amended to read as follows:
>
> "(d) Activities Not Subject to Prohibition.--This section does not apply to the selling, buying, transporting, or delivery of an animal in interstate or foreign commerce for any purpose, so long as the purpose does not include participation of the animal in an animal fighting venture."
>
> (b) Effective Date.--The amendment made by this section take effect 30 days after the date of the enactment of this Act.[14]

---

[14]   S. 107-1731 (Nov. 27, 2001), available at https://www.congress.gov/bill/107th-congress/senate-bill/1731/text.

The Report to accompany S. 1731 submitted by the Senate Committee on Agriculture, Nutrition, and Forestry explained these sections as follows:

Animal Welfare Act amendments to animal fighting provisions

Sections 1024 and 1025 seek to close loopholes in the Animal Welfare Act that have made it difficult for law enforcement personnel to enforce laws relating to animal fighting. Section 1024 increases the penalties for violations of the animal fighting provisions of the Animal Welfare Act and broadens the definition of the term ``interstate or foreign commerce'' to include movement from any State into any foreign country. Section 1025 removes language from the Animal Welfare Act that has allowed birds to be moved in interstate or foreign commerce for purposes of animal fighting as long as they are taken to a State in which cockfighting is legal. These changes will make it illegal for anyone to transport birds across State lines for fighting purposes, regardless of whether the State or foreign country to which they are being sent allows cockfighting.

The Committee notes that there are 142 State and local law enforcement agencies that have endorsed the effort to close the loopholes in the animal fighting provisions of the Animal Welfare Act. Law enforcement officials have indicated to the Committee that the current Federal law, which allows shipment of birds to States and countries where cockfighting is legal, has undermined the effectiveness of their State bans against cockfighting.

\*\*\*

The bill amends the Animal Welfare Act to prohibit the interstate or foreign movement of animals for the purpose of participation in an animal fighting venture. The Secretary would enforce this new provision as part of the enforcement program for other provisions of the Animal Welfare Act. The Committee does not have a current estimate of the number of people or animals now being transported across state or international boundaries for the purpose of fighting. However, the Committee is aware of the intense concern among many thousands of individuals who are active in animal health and welfare issues who believe that such activities involving animals should be prevented to the greatest extent possible.

\*\*\*

Ban on Commerce in Live Animals with the Intent to Fight

Under current law, any person is prohibited from transporting or delivering a dog or other animal--with the exception of live birds--between states to participate in an animal fighting venture. Section 1025 would amend the Animal Welfare Act to remove that exception and to ban the interstate movement of live birds for the purpose of fighting. The bill would not prohibit breeders from transporting animals for reasons other than to fight. In addition, section 1024 would prohibit the export

of live animals with the intent to fight. CBO cannot estimate the direct cost because sufficient information about the export of such live animals is not available.[15]

In effect, these sections coincide with Mr. Blumenauer's amendments to the House bill.

Because the versions of the bill passed by the House and the Senate were different, a Conference Committee was appointed to reconcile the differences. As a result of meeting of the Conference Committee, the amendments to Section 26 of the Animal Welfare Act that were finally included in the FARM SECURITY AND RURAL INVESTMENT ACT OF 2002 were the following:

SEC. 10302. PROHIBITION ON INTERSTATE MOVEMENT OF ANIMALS FOR ANIMAL FIGHTING.

(a) In General.--Section 26 of the Animal Welfare Act (7 U.S.C. 2156) is amended--

(1) by striking subsection (a) and inserting the following:

"(a) Sponsoring or Exhibiting an Animal in an Animal Fighting Venture.—

"(1) In general.--Except as provided in paragraph (2), it shall be unlawful for any person to knowingly sponsor or exhibit an animal in an animal fighting venture, if any animal in the venture was moved in interstate or foreign commerce.

"(2) Special rule for certain states.--With respect to fighting ventures involving live birds in a State where it would not be in violation of the law, it shall be unlawful under this subsection for a person to sponsor or exhibit a bird in the fighting venture only if the person knew that any bird in the fighting venture was knowingly bought, sold, delivered, transported, or received in interstate or foreign commerce for the purpose of participation in the fighting venture.";

(2) in subsection (b), by striking "or deliver to another person or receive from another person" and inserting "deliver, or receive"; and

(3) in subsection (d), by striking "subsections (a), (b), or (c) of this section" and inserting "subsection (c)".

(b) Effective Date.--The amendments made by this section take effect 1 year after the date of enactment of this Act.

---

[15] Report by the Committee on Agriculture, Nutrition, and Forestry to accompany S. 1731, S.Rept. 107-111 (Dec. 7, 2001), available at https://www.congress.gov/congressional-report/107th-congress/senate-report/117/1?overview=closed.

SEC. 10303. PENALTIES AND FOREIGN COMMERCE PROVISIONS OF THE ANIMAL WELFARE ACT.

(a) In General.--Section 26 of the Animal Welfare Act (7 U.S.C. 2156) is amended--

(1) in subsection (e)--

(A) by inserting "Penalties.—" after "(e)"; and

(B) by striking "$5,000" and inserting "$15,000"; and

(2) in subsection (g)(2)(B), by inserting before the semicolon at the end the following: "or from any State into any foreign country".

(b) Effective Date.--The amendment made by this section takes effect 1 year after the date of enactment of this Act.[16]

As noted above, the 1976 amendments that prohibited any person to knowingly sponsor or exhibit an animal in an animal fighting venture, or to knowingly sell, buy, transport, or deliver animals to be used in animal fighting ventures, included an exception for birds if the fighting venture was legal in the state in which it was to occur. The 2002 amendments expanded the prohibition by limiting the exception, which then read:

> With respect to fighting ventures involving live birds in a State where it would not be a violation of the law, it shall be unlawful under this subsection for a person to sponsor or exhibit a bird in a fighting venture only if the person knew that any bird in the fighting venture was knowingly bought, sold, delivered, transported, or received in interstate commerce for the purpose of participation in the fighting venture.

Thus, for it to be legal to sponsor or exhibit a bird in an animal fighting venture, it was no longer sufficient that the venture be legal under State law; now, the person sponsoring or exhibiting the bird must also have been unaware that a transaction involving a bird had occurred in interstate commerce.

---

[16] Conference Report to accompany H.R. 2646, H.Rept. 107-424 (May 1, 2012), available at https://www.congress.gov/congressional-report/107th-congress/house-report/424/1.

The 1976 amendments had also prohibited any person "to knowingly use the mail service... or any interstate instrumentality for purposes of promoting... an animal fighting venture...,"and this prohibition had also been subject to an exception for birds if the fighting venture was legal in the state in which it was to occur. This provision and the exception were not amended.

After the 2002 amendments, Section 26 of the ANIMAL WELFARE ACT provided as follows:

(a) ~~It shall be unlawful for any person to knowingly sponsor or exhibit an animal in any animal fighting venture to which any animal was moved in interstate or foreign commerce.~~ *SPONSORING OR EXHIBITING AN ANIMAL IN AN ANIMAL FIGHTING VENTURE.—*

*(1) IN GENERAL.— Except as provided in paragraph (2), it shall be unlawful for any person to knowingly sponsor or exhibit an animal in an animal fighting venture, if any animal in the venture was moved in interstate or foreign commerce.*

*(2) SPECIAL RULE FOR CERTAIN STATES.— With respect to fighting ventures involving live birds in a State where it would not be in violation of the law, it shall be unlawful under this subsection for a person to sponsor or exhibit a bird in the fighting venture only if the person knew that any bird in that fighting venture was knowingly bought, sold, delivered, transported, or received in interstate or foreign commerce for the purpose of participation in the fighting venture.*

(b) It shall be unlawful for any person to knowingly sell, buy, transport, ~~or deliver to another person or receive from another person~~ *deliver, or receive* for purposes of transportation, in interstate or foreign commerce, any dog or other animal for purposes of having the dog or other animal participate in an animal fighting venture.

(c) It shall be unlawful for any person to knowingly use the mail service of the United States Postal Service or any interstate instrumentality for purposes of promoting or in any other manner furthering an animal fighting venture except as performed outside the limits of the States of the United States.

(d) Notwithstanding the provisions of ~~subsections (a), (b), or (c)~~ *subsection (c)* of this section, the activities prohibited by such subsections shall be unlawful with respect to fighting ventures involving live birds only if the fight is to take place in a State where it would be in violation of the laws thereof.

(e) *PENALTIES.—* Any person who violates subsection (a), (b), or (c) shall be fined not more than ~~$5,000~~ *$15,000* or imprisoned for not more than 1 year, or both, for each such violation.

(f) The Secretary or any other person authorized by him shall make such investigations as the Secretary deems necessary to deter-mine whether any person has violated or is violating any provision of this section, and the Secretary may

obtain the assistance of the Federal Bureau of Investigation, the Department of the Treasury, or other law enforcement agencies of the United States, and State and local governmental agencies, in the conduct of such investigations, under cooperative agreements with such agencies. A warrant to search for and seize any animal which there is probable cause to believe was involved in any violation of this section may be issued by any judge of the United States or of a State court of record or by a United States magistrate within the district wherein the animal sought is located. Any United States marshal or any person authorized under this section to conduct investigations may apply for and execute any such warrant, and any animal seized under such a warrant shall be held by the United States marshal or other authorized person pending disposition thereof by the court in accordance with this paragraph (f). Necessary care including veterinary treatment shall be provided while the animals are so held in custody. Any animal involved in any violation of this section shall be liable to be proceeded against and forfeited to the United States at any time on complaint filed in any United States district court or other court of the United States for any jurisdiction in which the animal is found and upon a judgment of forfeiture shall be disposed of by sale for lawful purposes or by other humane means, as the court may direct. Costs incurred by the United States for care of animals seized and forfeited under this section shall be recoverable from the owner of the animals if he appears in such forfeiture proceeding or in a separate civil action brought in the juris-diction in which the owner is found, resides, or transacts business.

(g) For purposes of this section—

(1) the term 'animal fighting venture' means any event which involves a fight between at least two animals and is conducted for purposes of sport, wagering, or entertainment except that the term 'animal fighting venture' shall not be deemed to include any activity the primary purpose of which involves the use of one or more animals in hunting another animal or animals, such as water-fowl, bird, raccoon, or fox hunting;

(2) the term 'interstate or foreign commerce' means—

(A) any movement between any place in a State to any place in another State or between places in the same State through another State; or

(B) any movement from a foreign country into any State *or from any State into any foreign country*;

(3) the term 'interstate instrumentality' means telegraph, telephone, radio, or television operating in interstate or foreign commerce;

(4) the term 'State' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States;

(5) the term 'animal' means any live bird, or any live dog or other mammal, except man; and

(6) the conduct by any person of any activity prohibited by this section shall not render such person subject to the other sections of this Act as a dealer, exhibitor, or otherwise.

(h) (1) The provisions of this Act shall not supersede or otherwise invalidate any such State, local, or municipal legislation or ordinance relating to animal fighting ventures except in case of a direct and irreconcilable conflict between any requirements thereunder and this Act or any rule, regulation, or standard hereunder.

## 2007 AMENDMENTS TO THE ANIMAL WELFARE ACT

On May 3, 2007, President George W. Bush signed into law the ANIMAL FIGHTING PROHIBITION ENFORCEMENT ACT.[17] This bill amended the ANIMAL WELFARE ACT to prohibit knowingly selling, buying, transporting, or delivering, in interstate or foreign commerce, a knife, a gaffe, or any other sharp instrument for attachment to the leg of a bird for use in an animal fighting venture. It also made a violation of the animal fighting provisions of the ANIMAL WELFARE ACT *a felony* punishable by up to three years in prison, ***under Title 18 of the U.S. Code***. The law also made it a felony to trade, in interstate and foreign commerce, knives, gaffs, or other sharp objects designed for use in animal fighting, or to use the Postal Service or other "interstate instrumentality to trade in such devices, or to promote an animal fighting venture."

The Report to accompany H.R. 137 submitted by the Committee on the Judiciary explained the need for the legislation as follows:

Prohibitions against knowingly selling, buying, transporting, delivering, or receiving an animal in interstate or foreign commerce for the purposes of participation in an animal fighting venture were added to the Animal Welfare Act in 1976, with misdemeanor penalties of up to $5,000 in fines and up to 1 year in prison. Since then, Federal authorities have pursued fewer than a half dozen animal fighting cases, despite receiving numerous tips from inform-ants and requests to assist with state and local prosecutions. The animal fighting industry continues to thrive within the United States, despite 50 State laws that ban dogfighting and 48 State laws that ban cockfighting. Numerous nationally circulated animal fighting magazines still promote these cruel practices, and advertise fighting animals and

---

[17]   Pub. L. No. 110-22, 121 Stat. 88 (2007), available at https://www.govinfo.gov/content/pkg/PLAW-110publ22/pdf/PLAW-110publ22.pdf.

the accouterments of animal fighting. There are also several active websites for animal fighting enthusiasts, and paid lobbyists advocating animal fighters' interests.

In 2002, Congress amended these prohibitions to extend them more fully to live birds. Previously, none of the prohibitions had applied to live birds if the destination was a State in which their use in fighting was not a violation of that State's law.

While the 2002 amendments also increased penalties slightly, from a potential fine of $5,000 to one of $15,000, they were left at the misdemeanor level. By increasing penalties to the felony level, H.R. 137 will give prosecutors greater incentive to pursue cases against unlawful animal fighting ventures, and strengthen deterrence against them.[18]

However, it must be noted that, in her statement introducing the companion bill in the Senate, S. 261, Senator Cantwell explained that

Our legislation does not expand the federal government's reach into a new area, but simply aims to make current law more effective. It is explicitly limited to interstate and foreign commerce, so it protects States' rights in the two States where cockfighting is still allowed, and it protects States' rights the other 48 States--and all 50, for dogfighting--where weak Federal law is compromising their ability to keep animal fighting outside their borders.[19]

Proponents of various animal fighting bills had observed that the House and the Senate had approved strong animal fighting sanctions in their respective farm bills, but that the Conference Committee had removed the felony language in the FARM SECURITY AND RURAL INVESTMENT ACT OF 2002. They argued that stronger deterrents were needed because animal fighting is a brutal, inhumane practice closely associated with criminal activity, endangers children where aggressive dogs are being reared, and may contribute to the spread of avian influenza in the case of live birds.

Opponents countered that such measures would violate provisions in the U.S. Constitution that protect States' rights and that recognize private citizens' right to travel for economic reasons.

---

[18] Report by the Committee on Judiciary to accompany H.R. 137, H.Rept. 110-27 (Mar. 1, 2007), available at https://www.congress.gov/110/crpt/hrpt27/CRPT-110hrpt27.pdf.

[19] 153 Cong. Rec. S452 (daily ed. Jan. 11, 2007) (Sponsor introductory remarks on S. 261), available at https://www.congress.gov/congressional-record/2007/01/11/senate-section/article/S446-2.

Other opponents argued that completely banning or stiffening penalties for all animal fighting activities would drive them further underground, undermining efforts to protect animals and the public from any disease problems created by such activities.

After the 2007 amendments, Section 26 of the ANIMAL WELFARE ACT provided as follows:

(a) SPONSORING OR EXHIBITING AN ANIMAL IN AN ANIMAL FIGHTING VENTURE.—

(1) IN GENERAL.-- Except as provided in paragraph (2), it shall be unlawful for any person to knowingly sponsor or exhibit an animal in an animal fighting venture, if any animal in the venture was moved in interstate or foreign commerce.

(2) SPECIAL RULE FOR CERTAIN STATES.-- With respect to fighting ventures involving live birds in a State where it would not be in violation of the law, it shall be unlawful under this subsection for a person to sponsor or exhibit a bird in the fighting venture only if the person knew that any bird in that fighting venture was knowingly bought, sold, delivered, transported, or received in interstate or foreign commerce for the purpose of participation in the fighting venture.

(b) It shall be unlawful for any person to knowingly sell, buy, transport, deliver, or receive for purposes of transportation, in interstate or foreign commerce, any dog or other animal for purposes of having the dog or other animal participate in an animal fighting venture.

(c) It shall be unlawful for any person to knowingly use the mail service of the United States Postal Service or any ~~interstate instrumentality~~ *instrumentality of interstate commerce for commercial speech* for purposes of promoting or in any other manner furthering an animal fighting venture except as performed outside the limits of the States of the United States.

(d) Notwithstanding the provisions of subsection (c) of this section, the activities prohibited by ~~such subsections~~ *such subsection* shall be unlawful with respect to fighting ventures involving live birds only if the fight is to take place in a State where it would be in violation of the laws thereof.

(e) ~~PENALTIES.--   Any person who violates subsection (a), (b), or (c) shall be fined not more than $15,000 or imprisoned for not more than 1 year, or both, for each such violation.~~ *It shall be unlawful for any person to knowingly sell, buy, transport, or deliver in interstate or foreign commerce a knife, a gaff, or any other sharp instrument attached, or designed or intended to be attached, to the leg of a bird for use in an animal fighting venture.*

(f) The Secretary or any other person authorized by him shall make such investigations as the Secretary deems necessary to deter-mine whether any person has violated or is violating any provision of this section, and the Secretary may

obtain the assistance of the Federal Bureau of Investigation, the Department of the Treasury, or other law enforcement agencies of the United States, and State and local governmental agencies, in the conduct of such investigations, under cooperative agreements with such agencies. A warrant to search for and seize any animal which there is probable cause to believe was involved in any violation of this section may be issued by any judge of the United States or of a State court of record or by a United States magistrate within the district wherein the animal sought is located. Any United States marshal or any person authorized under this section to conduct investigations may apply for and execute any such warrant, and any animal seized under such a warrant shall be held by the United States marshal or other authorized person pending disposition thereof by the court in accordance with this paragraph (f). Necessary care including veterinary treatment shall be provided while the animals are so held in custody. Any animal involved in any violation of this section shall be liable to be proceeded against and forfeited to the United States at any time on complaint filed in any United States district court or other court of the United States for any jurisdiction in which the animal is found and upon a judgment of forfeiture shall be disposed of by sale for lawful purposes or by other humane means, as the court may direct. Costs incurred by the United States for care of animals seized and forfeited under this section shall be recoverable from the owner of the animals if he appears in such forfeiture proceeding or in a separate civil action brought in the juris-diction in which the owner is found, resides, or transacts business.

(g) For purposes of this section—

(1) the term 'animal fighting venture' means any event which involves a fight between at least two animals and is conducted for purposes of sport, wagering, or entertainment except that the term 'animal fighting venture' shall not be deemed to include any activity the primary purpose of which involves the use of one or more animals in hunting another animal ~~or animals, such as water fowl, bird, raccoon, or fox hunting~~;

(2) the term 'interstate or foreign commerce' means—

(A) any movement between any place in a State to any place in another State or between places in the same State through another State; or

(B) any movement from a foreign country into any State or from any State into any foreign country;

(3) ~~the term 'interstate instrumentality' means telegraph, telephone, radio, or television operating in interstate or foreign commerce~~ *the term 'instrumentality of interstate commerce' means any written, wire, radio, television or other form of communication in, or using a facility of, interstate commerce*;

(4) the term 'State' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States;

(5) the term 'animal' means any live bird, or any live dog or other mammal, except man; and

(6) the conduct by any person of any activity prohibited by this section shall not render such person subject to the other sections of this Act as a dealer, exhibitor, or otherwise.

(h) (1) The provisions of this Act shall not supersede or otherwise invalidate any such State, local, or municipal legislation or ordinance relating to animal fighting ventures except in case of a direct and irreconcilable conflict between any requirements thereunder and this Act or any rule, regulation, or standard hereunder.

*(i) The criminal penalties for violations of subsection (a), (b), (c), or (e) are provided in section 49 of title 18, United States Code.*

## 2008 Amendments to the Animal Welfare Act

The Food, Conservation, and Energy Act of 2008 contained a number of amendments to the Animal Welfare Act. [20] It strengthened the penalties related to animal fighting by adding prohibitions on possession and training as well as advertising animals or sharp instruments for use in animal fighting, and increasing criminal penalties from 3 to 5 years imprisonment. It also increased fines for violations of the Animal Welfare Act from $2,500 to $10,000 per violation, per animal, per day.

The animal fighting provision was based on language in S. 110-1880 and H.R. 110-3219—bills introduced shortly after the July 17, 2007, indictment of National Football League quarterback Michael Vick on charges related to dog fighting—to more explicitly ban various dog fighting activities, and to define the term. The introductory remarks on both bills made the explicit case for

---

[20]   Pub. L. No. 110-246, 122 Stat. 1651 (2008), available at https://www.govinfo.gov/content/pkg/PLAW-110publ246/pdf/PLAW-110publ246.pdf.

The House and Senate passed H.R. 110-2419 over the President's veto, enacting 14 of 15 farm bill titles into law in Public Law No. 110-234. The trade title (title III) was inadvertently excluded from the enrolled bill. To remedy the situation, both chambers re-passed the farm bill conference agreement (including the trade title) as H.R. 6124, again over the President's veto. H.R. 6124, in section 4, repealed Public Law 110-234 and amendments made by it, effective on the date of that Act's enactment.

a connection between the animal fighting and interstate commerce. For example, Senator John Kerry of Massachusetts claimed:

> Mr. KERRY. Mr. President, on July 26, I introduced critical legislation to stem the rising tide of dogfighting in our country. Dogfighting is one of society's most barbaric and inhumane activities. The dogs are mistreated, starved and conditioned for aggression, and then allowed to literally destroy one another in the ring. As we have read in the recent indictment of Atlanta Falcon's quarterback Michael Vick on dogfighting charges, poor-performing dogs are tortured, maimed, and killed. This illegal and despicable activity has no place in a civilized society.

> However, dogfighting has expanded its hold in recent years. The Humane Society of the United States estimates that 40,000 people in the United States are involved in professional dogfighting, and fight purses reach as high as $100,000. As many as 100,000 additional people are involved in "streetfighting," informal dogfighting that often involves young people in gangs.

> This legislation would place a Federal ban on all aspects of dogfighting activity from owning to transporting to training dogs for the purpose of fighting, to participating as a spectator at dogfighting ventures. I hope this legislation will end the practice of dogfighting in our country, once and for all.

> This Congress's authority to make the lucrative commercial aspects of dogfighting a crime cannot be doubted. Just 2 years ago, the Supreme Court made clear in *Gonzales v. Raich* that Congress's authority under the commerce clause extends to local activities that are an integral component of interstate criminal activities.

> This bill is well within that standard. As demonstrated in the Vick indictment and by the many law enforcement records, animal welfare reports, and economic studies that will be entered into the Record on this bill the--dogfighting industry has become nationwide in scope, and Congress is well within its authority to address both the nationwide framework and localized branches that are a critical part of that extensive criminal venture. We are dealing with a criminal industry has developed into a multifaceted, national and international commercial market that depends heavily upon illegal trafficking between States. Dogfighting is an inherently commercial and economic activity that has a substantial effect upon interstate commerce.

> Dogfighting is an interconnected, nationwide, lucrative commercial industry. In addition to high-stakes gambling, dogfighters exchange tens if not hundreds of millions of dollars annually on the purchase and sale of fighting dogs. Dog fighters also make top dollar by breeding or selling ``stud'' privileges for fighting dogs, and can make top dollar by breeding dogs that have proven themselves in the ring by killing multiple other dogs.

> This extensive commercial venture also requires trafficking in the specialized equipment necessary to train and house fighting dogs. There are even underground transport services to courier these dogs from one match to the next--assuming they

survive. Dog fighters also make a living handling and training fighting dogs for well-funded sponsors--as we saw in the Vick indictment. [...]

The effects of dogfighting on interstate commerce are neither indirect, remote, nor attenuated. Regulation of dogfighting is necessary to prevent and eliminate burdens upon interstate commerce. In addition, the regulation of dogfighting is an essential part of a larger regulatory scheme, the Animal Welfare Act, which mandates the humane treatment of animals in our society.[21]

With these amendments, the ANIMAL WELFARE ACT dispensed with requirement that the animal be transported in interstate or foreign commerce to provide the federal nexus; what was required was for the activity to be conducted or to have an effect on interstate or foreign commerce.

After the 2008 amendments, Section 26 of the ANIMAL WELFARE ACT provided as follows:

(a) SPONSORING OR EXHIBITING AN ANIMAL IN AN ANIMAL FIGHTING VENTURE.—

(1) IN GENERAL.— Except as provided in paragraph (2), it shall be unlawful for any person to knowingly sponsor or exhibit an animal in an animal fighting venture, ~~if any animal in the venture was moved in interstate or foreign commerce~~.

(2) SPECIAL RULE FOR CERTAIN STATES.— With respect to fighting ventures involving live birds in a State where it would not be in violation of the law, it shall be unlawful under this subsection for a person to sponsor or exhibit a bird in the fighting venture only if the person knew that any bird in that fighting venture was knowingly bought, sold, delivered, transported, or received in interstate or foreign commerce for the purpose of participation in the fighting venture.

(b) ~~It shall be~~ *BUYING, SELLING, DELIVERING, POSSESSING, TRAINING, OR TRANSPORTING ANIMALS FOR PARTICIPATION IN ANIMAL FIGHTING VENTURE.— It shall be* unlawful for any person to knowingly sell, buy, ~~transport, deliver, or receive for purposes of transportation, in interstate or foreign commerce, any dog or other animal for purposes of having the dog or other animal participate~~ *possess, train, transport, deliver, or receive any animal for purposes of having the animal participate* in an animal fighting venture.

(c) ~~It shall be~~ *USE OF POSTAL SERVICE OR OTHER INTERSTATE INSTRUMENTALITY FOR PROMOTING OR FURTHERING ANIMAL FIGHTING VENTURE.— It shall be* unlawful for any person to knowingly use the mail service of the United States Postal Service or any instrumentality of interstate commerce for commercial speech for purposes of *advertising an animal, or an instrument described in subsection (e), for use in an animal fighting venture*, promoting or in

---

[21]   153 Cong. Rec. S10409 (daily ed. July 31, 2007) (Introductory remarks on S. 1880), available at https://www.congress.gov/congressional-record/2007/07/31/senate-section/article/S10409-1.

any other manner furthering an animal fighting venture except as performed outside the limits of the States of the United States.

(d) ~~Notwithstanding~~ *VIOLATION OF STATE LAW.— Notwithstanding* the provisions of subsection (c) of this section, the activities prohibited by such subsection shall be unlawful with respect to fighting ventures involving live birds only if the fight is to take place in a State where it would be in violation of the laws thereof.

(e) ~~It shall be~~ *BUYING, SELLING, DELIVERING, OR TRANSPORTING SHARP INSTRUMENTS FOR USE IN ANIMAL FIGHTING VENTURE.— It shall be* unlawful for any person to knowingly sell, buy, transport, or deliver in interstate or foreign commerce a knife, a gaff, or any other sharp instrument attached, or designed or intended to be attached, to the leg of a bird for use in an animal fighting venture.

(f) ~~The Secretary~~ *Investigation of Violations by Secretary; Assistance by Other Federal Agencies; Issuance of Search Warrant; Forfeiture; Costs Recoverable in Forfeiture or Civil Action.— The Secretary* or any other person authorized by him shall make such investigations as the Secretary deems necessary to deter-mine whether any person has violated or is violating any provision of this section, and the Secretary may obtain the assistance of the Federal Bureau of Investigation, the Department of the Treasury, or other law enforcement agencies of the United States, and State and local governmental agencies, in the conduct of such investigations, under cooperative agreements with such agencies. A warrant to search for and seize any animal which there is probable cause to believe was involved in any violation of this section may be issued by any judge of the United States or of a State court of record or by a United States magistrate within the district wherein the animal sought is located. Any United States marshal or any person authorized under this section to conduct investigations may apply for and execute any such warrant, and any animal seized under such a warrant shall be held by the United States marshal or other authorized person pending disposition thereof by the court in accordance with this paragraph (f). Necessary care including veterinary treatment shall be provided while the animals are so held in custody. Any animal involved in any violation of this section shall be liable to be proceeded against and forfeited to the United States at any time on complaint filed in any United States district court or other court of the United States for any jurisdiction in which the animal is found and upon a judgment of forfeiture shall be disposed of by sale for lawful purposes or by other humane means, as the court may direct. Costs incurred by the ~~United States~~ for care of animals seized and forfeited under this section shall be recoverable from the owner of the animals *(1)* if he appears in such forfeiture ~~proceeding or in~~ *proceeding, or (2)* a separate civil action brought in the jurisdiction in which the owner is found, resides, or transacts business.

(g) ~~For purposes of~~ *DEFINITIONS.— In* this section—

(1) the term 'animal fighting venture' means ~~any event which involves a fight between at least two animals and is conducted for purposes of sport, wagering, or entertainment~~ *any event, in or affecting interstate or foreign commerce, that involves a fight conducted between at least 2 animals for purposes of sport, wagering, or entertainment,* except that the term 'animal fighting venture'

shall not be deemed to include any activity the primary purpose of which involves the use of one or more animals in hunting another animal;

~~(2) the term 'interstate or foreign commerce' means —~~

~~(A) any movement between any place in a State to any place in another State or between places in the same State through another State; or~~

~~(B) any movement from a foreign country into any State or from any State into any foreign country;~~

~~(3)~~ *(2)* the term 'instrumentality of interstate commerce' means any written, wire, radio, television or other form of communication in, or using a facility of, interstate commerce;

~~(4)~~ *(3)* the term 'State' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States;

~~(5)~~ *(4)* the term 'animal' means any live bird, or any live ~~dog or other~~ mammal, except man~~; and~~.

~~(6) the conduct~~ *(h) RELATIONSHIP TO OTHER PROVISIONS.— The conduct* by any person of any activity prohibited by this section shall not render such person subject to the other sections of this Act as a dealer, exhibitor, or otherwise.

~~(h)(1) The provisions~~ *(i) CONFLICT WITH STATE LAW.-*

*(1) IN GENERAL.— The provisions* of this Act shall not supersede or otherwise invalidate any such State, local, or municipal legislation or ordinance relating to animal fighting ventures except in case of a direct and irreconcilable conflict between any requirements thereunder and this Act or any rule, regulation, or standard hereunder.

~~(i) The criminal~~ *(j) CRIMINAL PENALTIES.— The criminal* penalties for violations of subsection (a), (b), (c), or (e) are provided in section 49 of title 18, United States Code.

### 2014 AMENDMENTS TO THE ANIMAL WELFARE ACT

While animal fighting or hosting an animal fighting exhibit were prohibited under the ANIMAL FIGHTING PROHIBITION ENFORCEMENT ACT OF 2007, attendance at animal fighting exhibitions was not.

To correct this situation, the ANIMAL FIGHTING SPECTATOR PROHIBITION ACT was introduced in the 113th Congress as companion bills H. Res. 366 and S. 666. The bill would have imposed criminal penalties for attendance at animal fighting exhibitions, or for causing a minor to attend an animal fight.

None of this bills were considered in their committees. However, this prohibition on attendance was added to both the 2013 House (H.R. 1947) and Senate (S. 954) farm bills and included as Section 12308 in the AGRICULTURAL ACT OF 2014.[22] The amendments to Section 26 of the ANIMAL WELFARE ACT enacted into law which provided as follows:

SEC. 12308. AMENDMENTS TO THE ANIMAL WELFARE ACT. [...]

(b) PROHIBITION ON ATTENDING AN ANIMAL FIGHT OR CAUSING A MINOR TO ATTEND AN ANIMAL FIGHT; ENFORCEMENT OF ANIMAL FIGHTING PROVISIONS.—

(1) PROHIBITION ON ATTENDING AN ANIMAL FIGHT OR CAUSING AN INDIVIDUAL WHO HAS NOT ATTAINED THE AGE OF 16 TO ATTEND AN ANIMAL FIGHT.—Section 26(a) of the Animal Welfare Act (7 U.S.C. 2156(a)) is amended—

(A) in the heading, by striking "SPONSORING OR EXHIBITING AN ANIMAL IN" and inserting "SPONSORING OR EXHIBITING AN ANIMAL IN, ATTENDING, OR CAUSING AN INDIVIDUAL WHO HAS NOT ATTAINED THE AGE OF 16 TO ATTEND"; and

(B) in paragraph (1)—

(i) in the heading, by striking "IN GENERAL" and inserting "SPONSORING OR EXHIBITING"; and

(ii) by striking "paragraph (2)" and inserting "paragraph (3)";

(iii) by redesignating paragraph (2) as paragraph (3); and

(iv) by inserting after paragraph (1) the following:

"(2) ATTENDING, OR CAUSING AN INDIVIDUAL WHO HAS NOT ATTAINED THE AGE OF 16 TO ATTEND.—It shall be unlawful for any person to—

---

[22] (,P.L. 113-79).

"(A) knowingly attend an animal fighting venture; or

"(B) knowingly cause a an individual who has not yet attained the age of 16 to attend an animal fighting venture."

(2) ENFORCEMENT OF ANIMAL FIGHTING PROHIBITIONS.— Section 49 of title 18, United States Code, is amended—

(A) by striking "Whoever" and inserting "(a) IN GENERAL.— Whoever";

(B) in subsection (a), as designated by paragraph (A), by striking "subsection (a)," and inserting "subsection (a)(1),"; and

(C) by adding at the end the following:

"(b) ATTENDING AN ANIMAL FIGHTING VENTURE.— Whoever violates subsection (a)(2)(A) of section 26 of the Animal Welfare Act (7 U.S.C. 2156) shall be fined under this title, imprisoned for not more than 1 year, or both, for each violation.

"(c) CAUSING AN INDIVIDUAL WHO HAS NOT YET ATTAINED THE AGE OF 16 TO ATTEND AN ANIMAL FIGHTING VENTURE.—Whoever violates subsection (a)(2)(B) of section 26 (7 U.S.C. 2156) of the Animal Welfare Act shall be fined under this title, imprisoned for not more than 3 years, or both, for each violation.".

After the 2014 amendments, Section 26 of the ANIMAL WELFARE ACT provided as follows:

(a) ~~SPONSORING OR EXHIBITING AN ANIMAL IN~~ *SPONSORING OR EXHIBITING AN ANIMAL IN, ATTENDING, OR CAUSING AN INDIVIDUAL WHO HAS NOT ATTAINED THE AGE OF 16 TO ATTEND* AN ANIMAL FIGHTING VENTURE.—

(1) ~~IN GENERAL~~ *SPONSORING OR EXHIBITING*.— Except as provided in ~~paragraph (2)~~ *paragraph (3)*, it shall be unlawful for any person to knowingly sponsor or exhibit an animal in an animal fighting venture.

*(2) ATTENDING OR CAUSING AN INDIVIDUAL WHO HAS NOT ATTAINED THE AGE OF 16 TO ATTEND.— It shall be unlawful for any person to—*

*(A) knowingly attend an animal fighting venture; or*

*(B) knowingly cause an individual who has not attained the age of 16 to attend an animal fighting venture.*

~~(2)~~ *(3)* SPECIAL RULE FOR CERTAIN STATES.— With respect to fighting ventures involving live birds in a State where it would not be in violation of the

law, it shall be unlawful under this subsection for a person to sponsor or exhibit a bird in the fighting venture only if the person knew that any bird in that fighting venture was knowingly bought, sold, delivered, transported, or received in interstate or foreign commerce for the purpose of participation in the fighting venture.

(b) BUYING, SELLING, DELIVERING, POSSESSING, TRAINING, OR TRANSPORTING ANIMALS FOR PARTICIPATION IN ANIMAL FIGHTING VENTURE.-- It shall be unlawful for any person to knowingly sell, buy, possess, train, transport, deliver, or receive any animal for purposes of having the animal participate in an animal fighting venture.

(c) USE OF POSTAL SERVICE OR OTHER INTERSTATE INSTRUMENTALITY FOR PROMOTING OR FURTHERING ANIMAL FIGHTING VENTURE.--It shall be unlawful for any person to knowingly use the mail service of the United States Postal Service or any instrumentality of interstate commerce for commercial speech for purposes of advertising an animal, or an instrument described in subsection (e), for use in an animal fighting venture, promoting or in any other manner furthering an animal fighting venture except as performed outside the limits of the States of the United States.

(d) VIOLATION OF STATE LAW.— Notwithstanding the provisions of subsection (c) of this section, the activities prohibited by such subsection shall be unlawful with respect to fighting ventures involving live birds only if the fight is to take place in a State where it would be in violation of the laws thereof.

(e) BUYING, SELLING, DELIVERING, OR TRANSPORTING SHARP INSTRUMENTS FOR USE IN ANIMAL FIGHTING VENTURE.--It shall be unlawful for any person to knowingly sell, buy, transport, or deliver in interstate or foreign commerce a knife, a gaff, or any other sharp instrument attached, or designed or intended to be attached, to the leg of a bird for use in an animal fighting venture.

(f) INVESTIGATION OF VIOLATIONS BY SECRETARY; ASSISTANCE BY OTHER FEDERAL AGENCIES; ISSUANCE OF SEARCH WARRANT; FORFEITURE; COSTS RECOVERABLE IN FORFEITURE OR CIVIL ACTION.--The Secretary or any other person authorized by him shall make such investigations as the Secretary deems necessary to deter-mine whether any person has violated or is violating any provision of this section, and the Secretary may obtain the assistance of the Federal Bureau of Investigation, the Department of the Treasury, or other law enforcement agencies of the United States, and State and local governmental agencies, in the conduct of such investigations, under cooperative agreements with such agencies. A warrant to search for and seize any animal which there is probable cause to believe was involved in any violation of this section may be issued by any judge of the United States or of a State court of record or by a United States magistrate within the district wherein the animal sought is located. Any United States marshal or any person authorized under this section to conduct investigations may apply for and execute any such warrant, and any animal seized under such a warrant shall be held by the United States marshal or other authorized person pending disposition thereof by the court in accordance with this paragraph (f). Necessary care including veterinary treatment shall be provided while the animals are so held in custody. Any animal involved in any violation of this section shall be liable to

be proceeded against and forfeited to the United States at any time on complaint filed in any United States district court or other court of the United States for any jurisdiction in which the animal is found and upon a judgment of forfeiture shall be disposed of by sale for lawful purposes or by other humane means, as the court may direct. Costs incurred by the for care of animals seized and forfeited under this section shall be recoverable from the owner of the animals (1) if he appears in such forfeiture proceeding, or (2) a separate civil action brought in the jurisdiction in which the owner is found, resides, or transacts business.

(g) DEFINITIONS--. In this section—

(1) the term 'animal fighting venture' means any event, in or affecting interstate or foreign commerce, that involves a fight conducted between at least 2 animals for purposes of sport, wagering, or entertainment, except that the term 'animal fighting venture' shall not be deemed to include any activity the primary purpose of which involves the use of one or more animals in hunting another animal;

(2) the term 'instrumentality of interstate commerce' means any written, wire, radio, television or other form of communication in, or using a facility of, interstate commerce;

(3) the term 'State' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States;

(4) the term 'animal' means any live bird, or any live mammal, except man.

(h) RELATIONSHIP TO OTHER PROVISIONS.--The conduct by any person of any activity prohibited by this section shall not render such person subject to the other sections of this Act as a dealer, exhibitor, or otherwise.

(i) CONFLICT WITH STATE LAW.--

(1) IN GENERAL.-- The provisions of this Act shall not supersede or otherwise invalidate any such State, local, or municipal legislation or ordinance relating to animal fighting ventures except in case of a direct and irreconcilable conflict between any requirements thereunder and this Act or any rule, regulation, or standard hereunder.

(j) CRIMINAL PENALTIES.— The criminal penalties for violations of subsection (a), (b), (c), or (e) are provided in section 49 of title 18, United States Code.

**2018 AMENDMENTS TO THE ANIMAL WELFARE ACT**

On December 20, 2018, the AGRICULTURE IMPROVEMENT ACT OF 2018 was signed by the President and became Public Law No. 115-334.[23] Section 12616 of the Act amended Section 26 of the ANIMAL WELFARE ACT, 7 U.S.C. § 2156, allegedly, to "extend[ the] prohibition on animal fighting to the Territories."

Section 12616 was the result of an amendment offered by Mr. Roskam of Illinois during the debate in House.[24] This amendment inserted into the bill the complete text of the PACE ACT, H. Res. 4202, which had been introduced by Mr. Roskam in the House on November 1, 2017, but had since languished in the House Committee on Agriculture, Subcommittee on Livestock and Foreign Agriculture.[25] The discussion during the debate regarding this amendment went as follows:

> The Chair recognizes the gentleman from Illinois.
>
> Mr. ROSKAM. Mr. Chair, I will yield myself 30 seconds because I have got to watch this clock sort of tight.
>
> So here is the situation: Animal fighting is inappropriate and wrong no matter where it happens. It is against the law in the continental United States, and,

---

[23]   Public Law No. 115-334, available at   https://www.congress.gov/115/plaws/publ334/PLAW-115publ334.pdf.

[24]   164 Cong. Rec. H4221 (daily ed. May 18, 2018) (Amendment No. 28 offered), available at https://www.congress.gov/congressional-record/2018/5/18/house-section/article/H4213-2; 164 Cong. Rec. H4228 (daily ed. May 18, 2018) (vote on Amendment No. 28), available at https://www.congress.gov/congressional-record/2018/05/18/house-section/article/H4226-2;   Final Vote Results for Roll Call 202, available at http://clerk.house.gov/evs/2018/roll202.xml.

[25]   *Compare* H. Res. 4202, 115th Cong. (2017), available at https://www.congress.gov/congressional-record/2017/11/01/house-section/article/H8384-2 *with* Amendment No. 28, available at https://www.congress.gov/congressional-record/2018/5/18/house-section/article/H4213-2.

The Statement of Constitutional Authority submitted together with H. Res. 4202 provided that "Congress has the power to enact this legislation pursuant to [...] Article 4, Section 3, Clause 2, The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States". 163 Cong. Rec. H8385 (daily ed. Nov. 1, 2017) (Constitutional Authority Statement), available at https://www.congress.gov/congressional-record/2017/11/01/house-section/article/H8385-4.

I should say, in all 50 States, and what we are proposing is to make that a standard in the territories as well.

There are some elements of animal fighting that is illegal in territories, but not altogether. This has been a long journey. It is a 40-year journey in this country. It reached a crescendo about 10 years ago when a standard was created in all 50 States. What this amendment does, Mr. Chairman, is very simple: it proposes to do the same thing in the territories.

Mr. Chair, I reserve the balance of my time.

Ms. PLASKETT. Mr. Chairman, I claim the time in opposition to this amendment.

The Acting CHAIR. The gentlewoman from the Virgin Islands is recognized for 5 minutes.

Ms. PLASKETT. Mr. Chair, I am thankful for the opportunity to express my strong opposition to the amendment.

It is deeply unfair to the United States Territories and contrary to the original intent of the Federal law in question: the Animal Welfare Act amendment, under which States have always been defined to include the territories.

First, the characterization of this amendment is closing a loophole and bringing the territories in with the States is highly misleading. The Animal Welfare Act adequately addresses interstate and foreign commerce of fowl for gaming purposes. The intent of the Federal law in this area has always been to aid States and other local law enforcement in jurisdictions where gamefowl events are illegal, and to prohibit the transport of animals from areas where they are, in fact, allowed.

The reason that there is a ban in all 50 States is not because of Federal law, but because of States' laws, and those States have banned them in their States. So for the Federal Government to impose that on the territories at this time, I believe, is deeply unfair. This is a highly regulated, cultural, and historic activity in the territories.

Let's not forget that the real author of this bill is The Humane Society which--when the Federal Government gets into this--becomes a slippery slope, as The Humane Society also wants to ban sporting activities or hunting activities in which animals hunt another animal. Is the gentleman from Illinois going to then offer an amendment to stop dogs who assist humans in looking for ducks and in other places? No.

But all of the territories' Delegates are against this amendment. And for someone from another State to offer an amendment to restrict something in the U.S. territories is deeply unfair.

At the last hearing of the committee in which this issue was addressed, which was nine sessions ago, The Humane Society also testified that legislation at State

level should be the proper fora to ultimately decide whether fowl gaming is permitted within those State's borders. And, again, States also meaning territories.

I agree, and so should this body. If only they were true to their word--and the gentleman from Illinois agreed with them--and the well-documented legislative history, we wouldn't be here. And hopefully, we would be talking about much more important matters--matters related to the farm bill, such as SNAP, such as school lunches, such as subsidies to our farmers.

Those are the things that should be in this farm bill, not this legislation. I reserve the balance of my time. [...]

Mr. BLUMENAUER. Mr. Chairman, I have been involved for 20 years to try and stop the barbaric practice of animal fighting, dogfighting, cockfighting, and slowly but surely, we have made the point under Federal law. It is a felony crime: to sponsor; exhibit an animal in a fighting venue; to buy, sell, deliver, possess, train animals; or to bring a minor to an animal fight.

But this has been long and slow and painful. And I violently disagree with the notion that we should have one set of rules. It is already a felony in Puerto Rico, Guam, and the Virgin Islands. **We shouldn't have one set of rules for some territories, and for the rest of the States.** At core, this is a barbaric, inhumane practice. The animals are drugged to make them more ferocious.

In cockfighting, they are equipped with metal spurs to slash each other--fighting to the death. I am sorry, this Congress has rejected the notion that this is culturally specific. Animal cruelty has no place in any territory, in any State, in any venue, by any race or ethnic group or cultural tradition. We have gone past that. We heard those arguments in some States when we were fighting to achieve these protections.

I strongly urge that we continue this 20-year fight to protect animals and protect people from being involved with this horrific activity, and close what is, in fact, a loophole. We should have no separate rules for States, territories, or anywhere under our jurisdiction.

The Roskam-Blumenauer amendment will fix this and finish a journey that we started 20 years ago. But sadly, because some people think it is acceptable, we are still going to have to fight this battle in the illegal sector as well. [...]

Ms. PLASKETT. Mr. Chair, I would hope that in the future, Congressman Roskam, the gentleman from Illinois, as well as Mr. Blumenauer would consider that no law should be different for the States and the territories, to allow the territories' people to be treated the same as the States. [...]

Ms. BORDALLO. Mr. Chairman, I rise to strongly oppose **the Roskam amendment which would force a Federal ban on the territories without our consent.**

I am sure Congressman Roskam would not want an amendment forced on his constituents without his consent or input. All five members from the territories

oppose this amendment, as cockfighting is a culturally significant practice in many of our islands.

As importantly, this amendment dictates to the territories without any opportunity for our constituents or their elected representatives to have any say.

Guam and other territories have enacted local laws to regulate cockfighting. Congress should not force this on more than 4 million Americans. Are you aware we are denied the right of a vote against this amendment on this House floor?

So many issues affecting the territories require Congress' attention: disaster recovery, poverty, healthcare, infrastructure, education, and equal voting rights on this floor. That is what we should be thinking about, and the House should be spending more time addressing these priorities.

I was not consulted on this matter, and neither were any of the other representatives from the territories. This is not fair, Mr. Chairman. This is not fair.

Yes, I agree. We should all be treated equally. Then why aren't the territories allowed to come down on the floor and to vote for final passage? That is the question I want to ask you. Let's be fair all the way.

Mr. Chairman, I ask this sponsor to withdraw this amendment so that we can provide our input and maybe we can work toward an agreement. Otherwise, I urge all Members to oppose the Roskam amendment. [...]

Mr. KNIGHT. Mr. Chairman, I would like to begin by thanking Chairman Roskam for his work on this amendment.

I do speak in favor of amendment No. 14 which strengthens Federal laws against animal fighting and has garnered bipartisan support many times over the past two decades. This is something that still happens. It still happens in our country. Just a month ago, over 1,000 birds were collected in a cockfighting raid just in my district in southern California.

Forcing two animals to fight to the death is not only a crime problem, it is a moral problem as well. There is strong bipartisan agreement that animal fighting is an inexcusable crime. We should strengthen our laws to protect animals and society from this barbaric activity which has no place in modern society. [...]

Miss GONZALEZ-COLON of Puerto Rico. Mr. Chairman, I thank the chairman for yielding.

We would never have had this debate if we had had an opportunity to have a public hearing on the issue. So I oppose this amendment because this is more Federal regulation for the territories.

Cockfighting is already a highly regulated industry in Puerto Rico. Originally regulated in 1933, then in 2007. We actually have offices regulating this issue that creates an $18 million industry on our island with 27,000 direct and indirect jobs. Already the farm bill permits that cockfighting will be prohibited in the States and

interstate commerce, but can be legal if the State or the territory authorizes and regulates the event.

That is the situation with the territories; we regulate the event. Actually, this proposed legislation will cause a highly regulated industry to go underground and go to the streets where there is no control at all.

Our constituents were never heard on this issue, and we are looking for that opportunity. I do believe that we are not having the opportunity to be treated equally. That is the reason I oppose this amendment, and we should have at least a public hearing on this issue.

Ms. PLASKETT. Mr. Chair, once again, you have heard the opposition to this at this time.

The characterization that it is closing a loophole, as I said, is misleading. I think it is important to understand what is going to happen if this is, in fact, made law, that this will drive this underground, and it will criminalize what has happened. Many individuals will become criminals at engaging in this activity.

If individuals are truly concerned with the territories, I would ask them to cosponsor legislation that helps people in the Virgin Islands and allows them to be treated fairly and not to be cruel to us with the cap on Medicaid.

I would ask that they would cosponsor much of the legislation that many of the delegates have offered up to support the people who live in the Virgin Islands as well.

Mr. Chair, I yield back the balance of my time.

Mr. ROSKAM. Mr. Chairman, this is a heartfelt issue obviously, but we are talking about rough stuff. We are talking about stuff that attracts gangs. We are talking about stuff that attracts drug trafficking. We are talking about stuff that attracts violence. We are talking about things that you would be ashamed to bring a child to. We are talking about things that if it were to happen in the well of this Chamber, many of us would look away because we would be shocked at the gratuitous violence.

To characterize this as a cultural norm that we should just walk away from is a misrepresentation, in my view. It is not persuasive to me. It is wrong. It is wrong if it happens in the 50 States, it is wrong if it happens in the territories, and we ought not be complicit in it.

The notion that this is going to drive this activity underground is a hackneyed old argument. We heard that before as it relates to the 50 States. That wasn't persuasive. We know what this activity is. We ought not be complicit in it.

Mr. Chairman, we should pass this amendment, and I yield back the balance of my time.

The Acting CHAIR. The question is on the amendment offered by the gentleman from Illinois (Mr. Roskam).

The question was taken; and the Acting Chair announced that the ayes appeared to have it.[26]

.

Section 12626 of the AGRICULTURE IMPROVEMENT ACT OF 2018 provided as follows:

SEC. 12616. EXTENDING PROHIBITION ON ANIMAL FIGHTING TO THE TERRITORIES.

(a) In General.--Section 26 of the Animal Welfare Act (7 U.S.C. 2156) is amended--

(1) in subsection (a)--

(A) in paragraph (1), by striking "Except as provided in paragraph (3), it" and inserting "It"; and

(B) by striking paragraph (3);

(2) by striking subsection (d); and

(3) by redesignating subsections (e), (f), (g), (h), (i), and (j) as subsections (d), (e), (f), (g), (h), and (i), respectively.

(b) Use of Postal Service or Other Interstate Instrumentalities.— Section 26(c) of the Animal Welfare Act (7 U.S.C. 2156(c)) is amended by striking "(e)" and inserting "(d)".

(c) Criminal Penalties.--Subsection (i) of section 26 of the Animal Welfare Act (7 U.S.C. 2156), as redesignated by section 2(3), is amended by striking "(e)" and inserting "(d)".

(d) Enforcement of Animal Fighting Prohibitions.--Section 49(a) of title 18, United States Code, is amended by striking "(e)" and inserting "(d)".

(e) <<NOTE: 7 USC 2156 note.>>  Effective Date.--The amendments made by this section shall take effect on the date that is one year after the date of the enactment of this Act.[27]

---

[26]  164 Cong. Rec. H4221-H4223 (daily ed. May 18, 2018), available at https://www.congress.gov/congressional-record/2018/05/18/house-section/article/H4213-2.

[27]  132 Stat. 5015 (2018), available at  https://www.congress.gov/115/plaws/publ334/PLAW-115publ334.pdf.

Thus, after the 2018 amendments, Section 26 of the ANIMAL WELFARE ACT currently provides as follows:

SECTION 26.

(a) SPONSORING OR EXHIBITING AN ANIMAL IN, ATTENDING, OR CAUSING AN INDIVIDUAL WHO HAS NOT ATTAINED THE AGE OF 16 TO ATTEND AN ANIMAL FIGHTING VENTURE.--

(1) SPONSORING OR EXHIBITING.— ~~Except as provided in paragraph (3), it~~ *It* shall be unlawful for any person to knowingly sponsor or exhibit an animal in an animal fighting venture.

(2) ATTENDING OR CAUSING AN INDIVIDUAL WHO HAS NOT ATTAINED THE AGE OF 16 TO ATTEND.— It shall be unlawful for any person to—

(A) knowingly attend an animal fighting venture; or

(B) knowingly cause an individual who has not attained the age of 16 to attend an animal fighting venture.

~~(3) SPECIAL RULE FOR CERTAIN STATES.— With respect to fighting ventures involving live birds in a State where it would not be in violation of the law, it shall be unlawful under this subsection for a person to sponsor or exhibit a bird in the fighting venture only if the person knew that any bird in that fighting venture was knowingly bought, sold, delivered, transported, or received in interstate or foreign commerce for the purpose of participation in the fighting venture.~~

(b) BUYING, SELLING, DELIVERING, POSSESSING, TRAINING, OR TRANSPORTING ANIMALS FOR PARTICIPATION IN ANIMAL FIGHTING VENTURE.— It shall be unlawful for any person to knowingly sell, buy, possess, train, transport, deliver, or receive any animal for purposes of having the animal participate in an animal fighting venture.

(c) USE OF POSTAL SERVICE OR OTHER INTERSTATE INSTRUMENTALITY FOR PROMOTING OR FURTHERING ANIMAL FIGHTING VENTURE.--It shall be unlawful for any person to knowingly use the mail service of the United States Postal Service or any instrumentality of interstate commerce for commercial speech for purposes of advertising an animal, or an instrument described in subsection ~~(e)~~ *(d)*, for use in an animal fighting venture, promoting or in any other manner furthering an animal fighting venture except as performed outside the limits of the States of the United States.

~~(d) VIOLATION OF STATE LAW.— Notwithstanding the provisions of subsection (c) of this section, the activities prohibited by such subsection shall be unlawful with respect to fighting ventures involving live birds only if the fight is to take place in a State where it would be in violation of the laws thereof.~~

(c) *(d)* BUYING, SELLING, DELIVERING, OR TRANSPORTING SHARP INSTRUMENTS FOR USE IN ANIMAL FIGHTING VENTURE.— It shall be unlawful for any person to knowingly sell, buy, transport, or deliver in interstate or foreign commerce a knife, a gaff, or any other sharp instrument attached, or designed or intended to be attached, to the leg of a bird for use in an animal fighting venture.

(f) *(e)* INVESTIGATION OF VIOLATIONS BY SECRETARY; ASSISTANCE BY OTHER FEDERAL AGENCIES; ISSUANCE OF SEARCH WARRANT; FORFEITURE; COSTS RECOVERABLE IN FORFEITURE OR CIVIL ACTION.--The Secretary or any other person authorized by him shall make such investigations as the Secretary deems necessary to deter-mine whether any person has violated or is violating any provision of this section, and the Secretary may obtain the assistance of the Federal Bureau of Investigation, the Department of the Treasury, or other law enforcement agencies of the United States, and State and local governmental agencies, in the conduct of such investigations, under cooperative agreements with such agencies. A warrant to search for and seize any animal which there is probable cause to believe was involved in any violation of this section may be issued by any judge of the United States or of a State court of record or by a United States magistrate within the district wherein the animal sought is located. Any United States marshal or any person authorized under this section to conduct investigations may apply for and execute any such warrant, and any animal seized under such a warrant shall be held by the United States marshal or other authorized person pending disposition thereof by the court in accordance with this paragraph (f). Necessary care including veterinary treatment shall be provided while the animals are so held in custody. Any animal involved in any violation of this section shall be liable to be proceeded against and forfeited to the United States at any time on complaint filed in any United States district court or other court of the United States for any jurisdiction in which the animal is found and upon a judgment of forfeiture shall be disposed of by sale for lawful purposes or by other humane means, as the court may direct. Costs incurred by the for care of animals seized and forfeited under this section shall be recoverable from the owner of the animals (1) if he appears in such forfeiture proceeding, or (2) a separate civil action brought in the jurisdiction in which the owner is found, resides, or transacts business.

(g) *(f)* DEFINITIONS--. In this section—

(1) the term 'animal fighting venture' means any event, in or affecting interstate or foreign commerce, that involves a fight conducted between at least 2 animals for purposes of sport, wagering, or entertainment, except that the term 'animal fighting venture' shall not be deemed to include any activity the primary purpose of which involves the use of one or more animals in hunting another animal;

(2) the term 'instrumentality of interstate commerce' means any written, wire, radio, television or other form of communication in, or using a facility of, interstate commerce;

(3) the term 'State' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States;

- 43 -

(4) the term 'animal' means any live bird, or any live mammal, except man.

(h) *(g)* RELATIONSHIP TO OTHER PROVISIONS.--The conduct by any person of any activity prohibited by this section shall not render such person subject to the other sections of this Act as a dealer, exhibitor, or otherwise.

(i) *(h)* CONFLICT WITH STATE LAW.--

(1) IN GENERAL.-- The provisions of this Act shall not supersede or otherwise invalidate any such State, local, or municipal legislation or ordinance relating to animal fighting ventures except in case of a direct and irreconcilable conflict between any requirements thereunder and this Act or any rule, regulation, or standard hereunder.

(j) *(i)* CRIMINAL PENALTIES.— The criminal penalties for violations of subsection (a), (b), (c), or (e) are provided in section 49 of title 18, United States Code.

We note that, despite Mr. Roskam's statements to the contrary, not all cockfighting events are banned under a plain reading of Section 26 of the ANIMAL WELFARE ACT. Likewise, the possession of fighting cocks or sharp instruments for cockfights are not always banned under a plain reading of Section 26. The fact is that such activity is illegal under Section 26 *only if related* to an "animal fighting venture". As defined in paragraph (f)(1) of Section 26, an animal fighting venture *must occur* in interstate or foreign commerce or *must affect* interstate or foreign commerce. Thus, so long as the activity occurs in intrastate commerce and does not have a substantial effect on interstate commerce, pursuant to the plain text of the statute, it continues to fall outside of the purview of the regulated conduct.

---

# CONCLUSION

---

The plain language of Section 26 of the ANIMAL WELFARE ACT, as it currently stands, limits the reach of the statute to activity which occurs in interstate or foreign commerce or has a substantial effect on interstate or foreign commerce. Thus, any purely intrastate activity or intrastate activity with a *de minimis* effect on interstate or foreign commerce must fall outside of the purview of the regulated conduct.

Respectfully submitted.

/s/ *Veronica Ferraiuoli Hornedo*
Veronica Ferraiuoli Hornedo
USDC-PR No. 213814
Legal Counsel to
HON. JENNIFFER A. GONZÁLEZ-COLÓN
Member of Congress

OFFICE OF THE RESIDENT COMMISSIONER
1609 Longworth House Office Building
Washington, DC 20515
P.O. Box 9023958
San Juan, PR 00902-3958
202.225.2615   787.723.6333
vero@mail.house.gov

Dated: October 20, 2019

---

## CERTIFICATE OF SERVICE

---

I hereby certify that on October 20, 2019, I electronically filed the foregoing document with the United States District Court for the District of Puerto Rico by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Wandymar Burgos-Vargas
wburgos@justicia.gobierno.pr

Carlos E. Rivera-Justiniano
cerivera@camaraderepresentantes.org

Christopher R. Healy
christopher.healy@usdoj.gov

Jorge Martinez-Luciano
squalus@rocketmail.com

Rafael A. Ojeda-Diez
rafaelojeda@ojedalawpr.com

Felix M. Roman-Carrasquillo
romanlawpr@gmail.com

Sheila J. Torres-Delgado
storres@alblegal.net

Edwin Prado-Galarza
pradolaw10@gmail.com

Raul Castellanos-Malave
rcastellanos@devconlaw.com

I also certified that a true and exact copy of this document has been sent, through first class mail, to:

Juan Carlos Albors
100 Road 165, Suite 706
Guaynabo, PR 0096

/s/ Veronica Ferraiuoli Hornedo
Veronica Ferraiuoli Hornedo